The Honorable, the Judges of the United States Court of Appeals for the Eighth Circuit. Hear ye, hear ye, hear ye. The United States Court of Appeals for the Eighth Circuit is now in session. All persons having business before this Honorable Court may now draw near and they will be heard. God save the United States and this Honorable Court. Please be seated. Ms. McKee, would you call the first case for argument this morning? Yes, Your Honor. The first case set for Tuesday, November the 18th, 2025. Case number 24-2347 from the Northern District of Iowa. Denise Child v. Unum Life Insurance Company of America Good morning. May it please the Court. My name is Stephen Dunn and I very much appreciate the opportunity to present argument here today on behalf of my client, Denise Child, who is in the courtroom here today. The ultimate issue in this case, Your Honors, is whether an existing loss provision can be applied in this case to deny Denise Child long-term care insurance benefits. And what I want to point out straight away is what the existing loss provision intends to accomplish for Unum. I'm going to read it very briefly. It's in their claims manual and it's a directive of how the insurance adjusters are supposed to treat claims when they come in for people who enrolled under guaranteed issue like Denise Child. And here's what it says. The intent of the existing ADL or cognitive loss on the effective date of coverage provision is to protect against liability for a disability that began prior to the claimant having coverage where the coverage is offered under guaranteed issue and the claimant's functional status on the effective date of coverage is not known. But, Counsel, that's contrary, directly contrary to a part of the policy, right? And that's why the policy The outline of coverage and two or three other provisions of the policy. Go ahead. It is. Yes, it is, Your Honor. And our complaint here is that they could not use this provision because it's illegal and it's contrary, contrary to the representations that were made to Miss Child and contrary to the statutes and the administrative rules that prohibit exactly what happened in this case. So, effectively, the intention of this provision is to issue conditional coverage to people like Denise who were never required to disclose their medical condition and their medical condition played no role in the decision to issue coverage. Well, if I may focus you, I have trouble just understanding the Iowa Code provision B a long-term care insurance policy shall not exclude coverage for a loss. You're familiar with this provision that it has unless it begins. Is that favorable or unfavorable to you? It's totally favorable. The statute specifically describes the circumstances under which a loss that is caused by a pre-existing condition can be excluded and it can only be excluded unless the loss of confinement begins within six months following the effective date of coverage. It could not be any more clear. Well, it could. Aren't you relying on a negative inference from that, that the background point is they've got to cover pre-existing conditions? I'm relying, Your Honor, respectfully on the plain reading of the statute. There's only one circumstance under which this statute permits the exclusion of a loss that's caused by a pre-existing condition and that's only if the loss of confinement begins within six months following the effective date of coverage. But, counsel, under your reading of Iowa law, in the state of Iowa, insurance policies for long-term care insurance must cover pre-existing conditions except for those that begin within six months of the date of coverage. Is that your position? Correct. That's exactly right. And the implementing rule of the statute specifically provides that any pre-existing condition, any pre-existing condition is only in play for six months after the effective date of coverage. The implementing rule says, it's 39.6 in the administrative rules, unless otherwise provided in the policy or certificate, a pre-existing condition, regardless of whether it is disclosed, need not be covered until the waiting period described in the statute, the six months, expires. So that means that after six months following the effective date of coverage, all pre-existing conditions are off the table. They cannot be considered in determining coverage. The only thing that can be considered after six months, after the effective date of coverage, is whether the insured requires assistance with two or more activities of daily living or is suffering from a severe cognitive impairment, exactly the way the policy describes how benefits are paid. Is it a pre-existing condition here or is it an existing loss under the statute? I guess my question is this. Had the loss already occurred, a pre-existing condition is something different than a loss. A loss means I've got ADLs. I don't have these particular activities of daily living, whereas a pre-existing condition usually doesn't always involve that. But it most certainly can, like in this case. And the answer is that the statutes, the statute and the implementing regulation, make clear that and define pre-existing condition, which is symptoms or a condition. And the loss that cannot be excluded unless it starts after six months has to be the direct result or caused by the pre-existing condition. So existing loss can't, it's not defined in the policy. It can only mean a loss that was caused by a pre-existing condition as the statute and the rules set forth. Or it could mean that pre-existing conditions without an existing loss will be covered, but pre-existing conditions with an existing loss will not be. Well, a pre-existing condition without a loss has no, means nothing in this policy. It does, right? Because you could have a bad back, but you have all your activities of daily living. And then 20 years later, your bad back becomes a worse back. And you can't bend over, you can't tie your shoe, you can't go to the bathroom. That's what I think it's getting at. It's not getting ones where you already have such a bad back that you can't do that at the time, at the time you sign up for the policy. Well, the whole idea here is that a loss that is caused by a pre-existing condition has limits as to when the insurance company can deny the loss. That's the point of the statute. It protects a guaranteed insured person from facing a denial for a condition that played no part in the decision to cover her in the first place. The whole statutory regime around the pre-existing condition scenario can only allow the insurance company to exclude a loss for six months after the effective date of coverage, regardless of when the loss occurs. Well, I just, I got to point out, your argument goes against the very nature of insurance. Maybe it's contractually required, we'll have to decide that. But you don't, for example, go out and get insurance after a house has been hit by a tree and then say, ooh, look, I've got this pre-existing loss, now you have to pay for it. And that's a little bit what we have here, which is you have a pre-existing loss, right, you're already eligible, potentially, for long-term care, and you're trying to insure for that particular loss. Well, that totally makes sense if an individual goes out to buy an insurance policy. First of all, in a long-term care insurance scenario, the statutes absolutely require that if an individual goes out to buy a policy outside of a group, they have to underwrite. It's mandatory. That takes care of the individual. In the group scenario, which we briefed extensively, the group guaranteed issue scenario, number one, guaranteed issue is a marketing device to draw people like Denise into buying coverage. The group as a whole, we went through this in our brief, the industry standards, their expert and everything, the group as a whole is underwritten. So not an individual person is underwritten, the entire group is underwritten. And that group underwriting protects the insurance company from having to pay losses, because they already know going into this that with guaranteed issue, they're going to get some people who have existing losses, just like Denise. They know that. And they price the policy exactly to account for that risk. Council, I will code 514G7 or whatever it is. That section does not just apply to group, right? It applies to any long-term care insurance policy, right? That's correct, Your Honor. However, this policy specifically waives the pre-existing condition exclusion in the policy for people who applied for higher limits of coverage. So this only applies in this case to people in the guaranteed issue group. The problem with the whole, with this existing loss provision, besides the fact that it directly conflicts with the statutes, prohibits post-claim underwriting. Council, because time is growing short, I'd like to turn to another issue. Yes. You had made allegations of certain representations being made by AEA. What facts do you believe are still in dispute regarding whether they were acting as UNUM's agent? The contract explicitly delegated full authority, including fiduciary responsibility to the agency to discuss enrollment, discuss policy provisions, to discuss exclusions. And Denise went to her employer. She went to her employer. The enrollment documents say if you have questions about coverage, ask your employer. They're the enrollment agent. They're the fiduciary with full responsibility to talk about coverages and exclusions. That's what the contract specifically says. What the court hung its hat on was a counter provision that UNUM put into the policy saying that under no condition is the employer the agent to bind the insurance company. Well, there's a conflict. There's a conflict here. You have explicit delegation. You have the employer acting on that delegation of authority. You have them acting specifically in this case in telling Denise when she went to them about this provision, said, does this apply to me? Can I apply for coverage? Will I be covered? Will my quadriplegia bar me from getting benefits in the future? And she was specifically told it will not. They're not asking you any medical questions. They're taking you as they find you. And by the way, we put this in our brief. If Denise had filled out a medical questionnaire that's in the enrollment package that specifically asks, are you in a wheelchair? Do you need assistance with bathing? All your ADLs. They would have rejected her for higher coverage, but they would have given her coverage under guaranteed issue. Now, if that doesn't mean that your medical condition is not going to bar you from benefits, then nothing does. That's how they introduced this policy to this group. They would have covered her if she could have rolled herself into the UNUM office and handed them the medical application, and they would have given her coverage. You just entered your rebuttal if you want to preserve it. I will preserve. Thank you. Do I have to touch anything? Apparently not. Thank you. Mr. Thrall. Thank you. May it please the court. Counsel, my name is Michael Thrall, and I represent the Appalachian UNUM Life Insurance Company of America. The language of the policy is clear and unambiguous. Indeed, plaintiff does not even attempt to predicate a breach of contract argument or claim on the language of the policy itself. It can't violate the state law, though, right? It is true it can't violate the state law. Okay, so tell me what you think Iowa Code 514G7 means. Well, I think that Iowa Code 514G7 applies to the preexisting limitations of the state nation exclusion. And as the district court found, and as we have argued throughout, plaintiff continues to conflate preexisting condition with an existing loss, and they're two separate concepts. The preexisting condition would deal with symptoms that arise or are in existence at the time. The existing loss addresses losses that have already occurred. Well, counsel, when you say a word, it means existing. And the code says for a loss, that means an existing loss, right? I don't believe that it applies to an existing loss. As the district court... What word do you put before a loss? Well, existing loss, but a preexisting condition and an existing loss are two separate concepts. And as the district court held, to conflate the two and to require an insurance company to provide coverage for a loss that's already existing at the time the policy is at issue would be antithetical to the very concept of insurance itself. Counsel, let's talk about an example that was discussed earlier. If a person has a bad back, is that a preexisting condition or a preexisting loss, and where's the line between the two? Okay, it's a preexisting condition because those symptoms or the health condition had not yet manifested itself in a loss. Had the individual had, to use that example, a bad back, but had already lost existing ADLs, then it would have been an existing loss. But does it have to be a loss of ADL to be a loss? Well, it has to be a loss. It's an existing loss of ADLs. In other words, you could have, for example, an individual could have been diagnosed with multiple sclerosis, MS, but not yet had a loss of the activities of daily living and been able to get coverage under the group policy. And then somewhere down the line, the MS progresses and they have a loss of ADLs. On MS, I just want to ask this question, I want to follow up. Suppose you couldn't walk, that was a preexisting loss, could not walk, that's an activity of daily living. Then suppose you can't go to the bathroom ten years later, you lose control of your facility to go to the bathroom. How does the policy treat that where you have an existing loss, but now you have a new loss from the exact same condition? Okay, you would not be able to recover under the policy for the existing loss of ADL of being able to walk. You would be able to recover for the subsequent loss of going to the bathroom if they otherwise satisfied the terms of the policy. I think there have to be two ADLs that have lost to trigger benefits under the policy. So what if you only have the one and then you go to the second one? What I'm trying to figure out is what difference that makes because you're eligible for long-term care perhaps just not being able to walk maybe? I guess you would need two. Suppose you already have two and then you add one more. Would that be an existing loss in which case you were eligible at the time you got it and so therefore even though you have one more ADL that's gone you can't recover? No, the focus is on the specific ADL. So if you had an existing loss of an ADL, for example on yours to be able to move, walk, you would not receive coverage for that existing loss of that ADL if that was an existing loss at the effective date of the coverage. I'm also stuck. I want to go back to the statute and B. It says a long-term care insurance policy shall not exclude coverage for a loss. This is Judge Benton's question, which is the result of a pre-existing condition. It doesn't say pre-existing condition. It says loss before that, which is the result of a pre-existing condition unless the loss or confinement begins within six months following the effective date. Now I completely agree with you that that is contrary to the basic idea of insurance, but it's also the statute and I don't know what to do with the word loss. What do you think the loss means here in the statute? I think the loss is referenced in the statute, 514G7, refers to a loss that occurs after the policy as issued. In other words, a long-term care insurance policy should not exclude coverage for a loss or confinement, which is a result of a pre-existing condition. I think that the only rational way to interpret that statute is to read loss or confinement as something that arises or occurs after the policy has been issued. I mean, it's a very poorly drafted statute with all due respect to the Iowa legislature, but what you're saying does not really go with the plain language, which it says loss or confinement and the only ones it says unless, so that's like an except, except the loss or confinement begins within six months. So it doesn't seem to say it gives one condition and that condition is not met here. I agree with you that it makes no sense, but that's what it says. Yes, and I don't believe that you can interpret the statute rationally in that function. I think certainly, and the policy itself is... Counselor, are you saying that the statute is unconstitutional? Iowa has a long standard of provisions that a statute has to meet, you may know. A very different U.S. Constitution. And are you saying that the Iowa statute is so irrational a court can change it? No, I am not saying that, Your Honor. I'm saying that a reading of the statute, the only way to read the statute is to refer or define the loss as something that occurs after the policy has been issued. And certainly remember that this particular policy form was submitted to the Iowa Insurance Division. The Iowa Insurance Division reviewed it, approved it. So we've got a policy form that's been approved by the... Well, the Supreme Court says that's not conclusive though, right? Well, it's not conclusive. The filing is not conclusive, right? On certain things, but I think certainly if you look at plaintiff's argument in this case that is attacking where certain things are located in the policy, the nature of the language, that type of thing, I think that the insurance division's approval of the form and certainly recognizing they could disapprove it at any time since it was issued as well is certainly an important fact. Counsel, I would like to ask you about the reasonable expectations doctrine. From the perspective of a consumer or a person buying insurance, why isn't the guaranteed issue language deceptive or at least confusing? It is not because guaranteed issue refers to the guarantee that a policy will be issued. In other words, a person will be eligible to receive a policy. It's not a guarantee of benefits. It's not a guarantee of coverage. And even the plaintiff herself testified that she understood that notwithstanding the fact that the policy was guaranteed issue that she would have to meet the terms and conditions of that policy to be eligible for benefits. And I think certainly a couple of things. First, the Iowa courts have refused to apply the reasonable expectation doctrine where explicit policy language defeats any expectation the policy provided coverage. And we have in this case certainly the policy language, we have the outline of coverage, we've got the election of benefits form, all of which expressly, unequivocally state that if you have an existing loss of ADLs, you will not be able to receive benefits for that existing loss unless you recover. Second, I submit that it's simply not reasonable to expect to purchase insurance for a loss after it has occurred. As we discussed earlier, the district court found that plaintiff... I have a weak argument for you here where you have the $6,000 threshold in the policy. I understand that in a normal policy, but doesn't your $6,000 threshold, tell me if I'm saying it wrong, but I'm pretty sure... No, I understand what you're saying. Yeah, I bet you get the question too. Yeah, no, I understand the question. Tell me your reply to it. No, I don't think it makes any difference at all. The $6,000 threshold only triggers underwriting. You agree, I'm sorry I mean to interrupt you because I didn't ask the question very well. You waive physical exam above the $6,000 and you, below the $6,000, say... I have it backwards? I have it backwards. Yes, I have it backwards. The reason I have to stop myself. But anyhow, I think you've got my point, but haven't you by having the threshold in effect said that it's going to be a really guaranteed issue? No, I don't think it is. If you elect coverage below the $6,000 figure, you do not have to go through underwriting. All you have to do is complete the benefit election form, which right above the signature expressly states that if you have an existing loss of ADLs. If you are at the $6,000 level, then you would undergo underwriting, certainly, and there would be underwriting that would occur. But even if you go through the underwriting, you're still with the same policy, and that policy does not provide coverage for an existing loss of ADLs that existed on the effective date of the coverage. I also think on the reasonable expectations issue, since we're dealing with that particular issue at this point in time, as it relates to the representations of the employer, the policy expressly provides in two different places that under no circumstances will the policyholder be deemed to be UNUM's agent. Further, any changes to the policy must be in writing and approved by an officer or registrar of UNUM. I think certainly the general rule is that neither the employer nor the employer's agent is an agent of the insurance company or clothed with the power to make or waive any of the conditions of a group policy covering the employees. Plaintiff relies on the provisions of the guide. We've set forth our argument in the brief that that guide limits the role of the employer to providing employees with the enrollment kit, making sure that they have completed the forms, and reviewing the benefit election form to make sure that they're complete. The other provisions on which plaintiff relies are in the ERISA portion of the policy. The ERISA does not apply to this particular policy since it was issued to a government entity, and ERISA does not apply and those provisions do not apply. So I think certainly the district court correctly ruled in UNUM's favor on the breach of contract claim, correctly rejected the plaintiff's statutory argument, rejected the reasonable expectation argument as well. Certainly as there is no breach of contract, there can be no first party bad faith, just as a matter of law under existing Iowa law. Regardless, plaintiff's claim was fairly debatable. UNUM had a reasonable basis to deny the claim based on a number of factors, including most importantly the language of the policy itself, the novel statutory argument. All rise. The court is back in session. Everyone may be seated. And while you're seated, we're going to go ahead and proceed. The clerk has discussed with counsel how your time will be kept, and you'll be notified. It won't be right in front of you or right in front of me. Ms. McKee will be deciding that. And if counsel wanted to, there is light in that area. If counsel has some way that doesn't create noise and distraction, if counsel has some way of keeping time, time around their own devices sometimes, that would be permitted, for sure, without noise. And so that's the way we'll proceed. As to the first case, we'll have two minutes of time for rebuttal. And Ms. McKee will be the one telling us when the time is really up. So she's presiding on time, and I'm presiding on cases. So let's proceed then with the rebuttal argument for our first case of this morning. Thank you, Your Honors. I want to briefly address some of the concerns that were raised here. What is the point of guaranteed insurance? They don't ask any medical questions. The issue of policy. The insurer pays premiums here in this case for 18 years. What did she get for the money? And they kept the money. What did she get under the guaranteed issue? What protection did she receive from the receipt of this, I'm sorry to say, worthless piece of paper? She would have received protection from severe cognitive impairment, right? That was the other portion of what was insured. But she bought insurance to cover the full spectrum of what is otherwise covered in the policy. Let me ask you this. I want to go to the statute, because as you heard, there's a couple of us that are interested in that statutory argument. My question for you is as follows, which is, can the statute require coverage before the effective date of her policy? The answer is unequivocally yes. The statute compels it. It says so in the plain language of the statute. It is clear an existing loss, undefined, is nothing more than a loss that occurred as a result of a pre-existing condition, quadriplegia. That's what an existing loss is. They issued her coverage when she had an existing loss. The statute says you cannot deny coverage for a loss unless the loss or confinement begins within six months following the effective date of coverage. Your time has expired. Thank you both for your argument in this case. Case number 24-2347 is submitted for decision by the court. Ms. Mahid, please call the next case.